UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 07-3672(DSD/JJK)

Gary R. Barnes,

      Plaintiff,

v.                                                           **ORDER**

City of Coon Rapids, Minnesota,

      Defendant.

    William J. Mavity, Esq., 2835 South Service Drive, Suite 209, Red Wing, MN 55066, counsel for plaintiff.

    Patricia Y. Beety, Esq., League of Minnesota Cities, 145 University Avenue West, St. Paul, MN 55103, counsel for defendant.

This matter is before the court upon defendant City of Coon Rapids' ("City") motion for summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendant's motion.

**BACKGROUND**

This employment dispute arises out of the City's August 1, 2006, termination of plaintiff Gary Barnes ("Barnes"). The City hired Barnes on September 10, 2000, to work as a custodian in its building and maintenance division. Barnes' duties included cleaning public buildings, maintaining and repairing floors, walls,

carpet, electrical systems, plumbing and building exteriors, snow removal, carpentry, coordinating janitorial services and performing boiler maintenance duties. (Pl.'s Ex. J at 1.)

In 1978, Barnes was diagnosed with Hodgkins Disease and underwent a splenectomy, which resulted in a suppressed immune system. Barnes began to experience frequent illnesses in 2003, and was hospitalized for bacterial infections and high fevers, causing him to miss work occasionally. Around that time, Barnes informed the City that substantial amounts of mold existed throughout the City Center buildings where he worked. On October 28, 2005, Barnes unsuccessfully applied for a position in the parks department, noting on the application that he believed the mold in the City Center was contributing to his illnesses.

On April 5, 2006, the City reassigned Barnes to a custodian position in the public works garage. Barnes took vacation leave shortly thereafter. On April 27, 2006, Barnes submitted certification from his physician, Dr. Donald Deye ("Deye"), requesting medical leave. Deye noted that Barnes suffered from chronic conditions including, "morbid obesity with severe sleep apnea," "recurrent cellulitis" related to past cancer treatments, and "recurrent gout" that worsened by walking and standing. (Def.'s Ex. 15 at 2.) On June 8, 2006, the City granted Barnes twelve weeks of Family Medical Leave Act ("FMLA") leave beginning April 24, 2006. (Def.'s Ex. 23 at 1.)

In April 2006, Barnes also applied for long-term disability insurance. In his application, Barnes noted that he suffered from "acid build[-up] in joints, severe sleep apnea, no spleen, hospitalization, no immune system, infections, allergi[es] to grass, trees, weeds, etc." (Def.'s Ex. 17 at 2.) In response to questions on the application, Barnes provided no suggestions about how his disability might be accommodated. Barnes' physician submitted written support for the disability insurance application, citing the same recurring health problems as listed in the FMLA certification. (Id. at 1.) According to his physician, Barnes was only "capable of sedentary, clerical or administrative work," could only stand, walk, drive, or bend occasionally and could not lift more than twenty pounds. (Id.; Barnes Dep. at 147-48.) Barnes' application was approved.

On July 17, 2006, Coon Rapids city manager, Matthew Fulton ("Fulton"), wrote Barnes a letter indicating that his FMLA leave had ended on July 16, 2006, and that Barnes had exhausted his sick leave and vacation. (Pl.'s Ex. F.) Fulton notified Barnes that the City would extend his FMLA leave by two weeks and expected him to return to work as a custodian in the public works garage on July 31, 2006. Fulton explained that if Barnes did not reply by July 31, 2006, his employment would be terminated. (Id.) Barnes responded on July 24, 2006, indicating his intent to return to work on July 31, 2006. (Pl.'s Ex. G.) Barnes noted, however, that it

would be difficult for him to "return to work in the garage because of the concrete floors." (Id.) Instead, Barnes requested reassignment to the parks department, where he could "work without the risk of exposure or injury from either the mold conditions at City Hall or the concrete floors in the garage." (Id.)

Upon receipt of Barnes' July 24, 2006, letter, the City's attorneys and management officials discussed his work restrictions and considered available accommodations. The parks department, however, had no open positions at that time. In refusing Barnes' request for reassignment, the City did not inform him that there were no open positions. (Barnes Dep. at 157-58.) Barnes did not return to work or contact the City to explain his absence. (Id. at 159-62.) On August 1, 2006, the City sent Barnes a letter terminating his employment for failure to return to work. (Pl.'s Ex. H.)

On January 12, 2007, Barnes filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), alleging that the City violated the Americans with Disabilities Act ("ADA") by terminating his employment. The EEOC notified Barnes of his right to sue on May 15, 2007. Barnes brought this action on August 9, 2007, asserting violations of the

4

ADA and common law negligence.[1]  The City filed the instant motion for summary judgment on October 31, 2008.

**DISCUSSION**

**I.   Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material only when its resolution affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party.  See id. at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial.  See

---

[1] Barnes has waived his negligence claim by not pursuing it in his opposition memorandum. See Berryhill v. Schriro, 137 F.3d 1073, 1075 n.2 (8th Cir. 1998) (dismissing unbriefed claim as waived); Graham v. Rosemount, Inc., 40 F. Supp. 2d 1093, 1101 (D. Minn. 1999) (same).

Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of his claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**II. Failure to Accommodate**

Barnes argues that the City violated the ADA by not accommodating his disability. The ADA requires employers to provide "reasonable accommodations to the known physical ... limitations of an otherwise qualified individual with a disability who is an ... employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A). An employee establishes a violation of the duty to accommodate by showing he is a qualified individual with a disability and the employer knew of the disability but did not provide a reasonable accommodation. E.E.O.C. v. Sears, Roebuck & Co., 417 F.3d 789, 797 (8th Cir. 2005) (citation omitted). The plaintiff "at all times retains the burden of persuading the trier of fact that he has been the victim of illegal discrimination due to his disability." Benson v. Nw. Airlines, Inc., 62 F.3d 1108, 1112 (8th Cir. 1995) (citations omitted). The plaintiff must first make a facial showing that he is disabled and suffered an adverse employment action. See Fenney v. Dakota, Minn. & E. R.R. Co., 327 F.3d 707, 712 (8th Cir. 2002). The plaintiff must then show that

he is a "qualified individual." Id.  The parties agree that Barnes suffered an adverse employment action.  The City, however, argues that Barnes was not disabled until April 2006, and that he was not a qualified individual at the time of his termination.

**A.   Disability**

The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).   Major life activities include, performing manual tasks, walking, standing, lifting, reaching and working.  See Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 948 (8th Cir. 1999); Helfter v. United Parcel Serv., Inc., 115 F.3d 613, 616 (8th Cir. 1997); 29 C.F.R. § 1630.2(I).

Barnes first argues that he has been disabled since beginning his employment with the City in 2000.  Barnes, however, was able to work without major limitations until April 2006, and he offers no evidence that his health impairments substantially limited a major life activity before that time.  Therefore, the court determines that Barnes was not disabled within the meaning of the ADA until April 2006.

**B.   Qualified Individual**

The ADA protects only "qualified individual[s] with a disability."   See 42 U.S.C. § 12112(a); Moritz v. Frontier

7

Airlines, 147 F.3d 784, 786 (8th Cir. 1998). A "qualified individual" is an individual who possesses the necessary skill, education, experience and training prerequisites for the job, and can perform the essential job functions with or without reasonable accommodation. See 42 U.S.C. § 12111(8); Cravens v. Blue Cross & Blue Shield, 214 F.3d 1011, 1016 (8th Cir. 2000); Benson, 62 F.3d at 1111-12.

In this case, Barnes does not dispute that his medical restrictions prevented him from performing the essential duties of his job without an accommodation. Rather, Barnes argues that the City violated the ADA by denying his July 24, 2006, request for a transfer to the parks department and not engaging in an interactive process to identify a reasonable accommodation.

When an employee "cannot perform the essential functions of the job without an accommodation, he must only make a facial showing that a reasonable accommodation is possible." Fenney, 327 F.3d at 712. A "reasonable accommodation" may include "job restructuring, part-time or modified work schedules" or "reassignment to a vacant position." 42 U.S.C. § 12111(9). After an employee requests an accommodation, the employer must engage in an interactive process to evaluate possible reasonable accommodations, and failure to do so is prima facie evidence of the employer's bad faith. Buboltz v. Residential Advantages, Inc., 523

F.3d 864, 870 (8th Cir. 2008) (citing Ballard v. Rubin, 284 F.3d 957, 960 (8th Cir. 2002)).

As an initial matter, it is undisputed that no position was available in the parks department, and the City had no duty to create a position to accommodate Barnes. See Fjellestad, 188 F.3d at 950. Therefore, the court determines that a transfer to the parks department was not a reasonable accommodation, and the City's refusal to transfer Barnes does not support his claim.

An employer fails to participate in an interactive process if the employer knew of the employee's disability, the employee requested a reasonable accommodation, the employer did not make a good faith effort to assist the employee in seeking accommodations and the employee could have been reasonably accommodated but for the employer's lack of good faith. See Canny v. Dr. Pepper/Seven-Up Bottling Group, Inc., 439 F.3d 894, 902 (8th Cir. 2006) (citing Fjellestad, 188 F.3d at 952). Employers may demonstrate a good faith attempt to find a reasonable accommodation for a disabled employee in many ways, such as meeting with the employee, requesting information about the employee's conditions and limitations, asking the employee what he wants for a specific accommodation, showing some sign of considering the employee's request and offering and discussing available alternatives when the employee's request is too burdensome. See Fjellestad, 188 F.3d at 953 n.7 (citation omitted). The employee must also work with the

employer in good faith to help determine what accommodation is necessary. Cannice v. Norwest Bank Iowa N.A., 189 F.3d 723, 727 (8th Cir. 1999) (citing Fjellestad, 188 F.3d at 616-19); see also E.E.O.C. v. Convergys Customer Mgmt. Group, Inc., 491 F.3d 790, 795 (8th Cir. 2007) ("Our case law has established a shared responsibility between employers and employees to resolve accommodation requests.").

After receiving notice of Barnes' disability in April 2006, the City's human resources staff met with Barnes to complete his long-term disability insurance application, placed him on medical leave and sought information about his medical conditions. While Barnes was on FMLA leave, the City contacted him several times by phone and through letters to request additional information about his work restrictions. The City also extended Barnes' FMLA leave by two weeks. Cf. Dropinski v. Douglas County, 298 F.3d 704, 710 (8th Cir. 2002) (employer acted in good faith when it allowed disabled employee to take leave). Barnes, however, never returned to work, nor responded to the City's inquiries about his status. The court determines that the City's actions satisfied the ADA's interactive process requirement.[2] See Peebles v. Potter, 354 F.3d

---

[2] Barnes asks the court to strike the affidavits of Jeff Karlson and Melvin Doherty as inconsistent with their deposition testimony. The affidavits, however, do not contradict the deposition testimony, and the court denies Barnes' request. See Bass v. City of Sioux Falls, 232 F.3d 615, 618 (8th Cir. 1999) (court need not strike affidavit that "does not actually (continued...)

761, 769-70 (8th Cir. 2004) (no interactive process violation); Dropinski, 298 F.3d at 709-710 (same).  Therefore, Barnes has not established that he is a qualified individual under the ADA, and summary judgment is warranted.

## CONCLUSION

Based upon the above, **IT IS HEREBY ORDERED** that the City's motion for summary judgment [Doc. No. 16] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  April 30, 2009

                                                   s/David S. Doty
                                                   David S. Doty, Judge
                                                   United States District Court

---

[2](...continued)
contradict" earlier testimony).  Furthermore, even if the affidavits contradicted the deposition testimony, the court determines that other evidence in the record supports the City's summary judgment motion.